UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD PERRY DICKERSON,

    Petitioner,

v.

CARMEN PALMER,

    Respondent.
_____/

Case No. 17-cv-11438

HON. AVERN COHN

**MEMORANDUM AND ORDER**
**GRANTING RESPONDENT'S MOTION TO DISMISS (Doc. 4)**
**AND DENYING A CERTIFICATE OF APPEALABILITY**

## I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Gerald Perry Dickerson was convicted of second-degree murder, M.C.L. § 750.317, and sentenced to thirty-nine to sixty years imprisonment. Petitioner, through counsel, challenges his conviction on six grounds. Before the Court is Respondent's motion to dismiss on the grounds that the petition is untimely and Petitioner has not established that he is entitled to equitable tolling or that he is actually innocent. The Court agrees. For the reasons that follow, the motion will be granted.

## II. Background

This case arose from the arson of a home on Eastwood Street in Detroit, Michigan. The incident occurred about 4:30 a.m. on September 30, 2007. The two homeowners safely escaped from the burning house, but their adult daughter who was

1

spending the night in their home died a few days after the fire due to complications from smoke and soot inhalation. Petitioner was arrested for the crime three years later and then charged with first-degree (felony) murder and two counts of assault with intent to commit murder. At his jury trial in Wayne County Circuit Court, prosecution witness Anthenetha Johnson

> testified that she heard [Petitioner] admit that he burned down the house. [Anthony] Marshall testified that on the night the arson occurred, [Petitioner] asked Marshall to be his lookout, and he saw [Petitioner] carrying a bag of glass bottles towards the home where the arson occurred. There was expert testimony presented that the fire was likely caused by a Molotov cocktail, which is created using glass bottles.

People v. Dickerson, No. 306765, 2013 WL 195959, at *3 (Mich. Ct. App. Jan. 17, 2013) (unpublished).[1]

Petitioner's defense was that Johnson and Marshall were not credible witnesses and that a third person, Curtis Hawkins, was the likely arsonist. The jury acquitted Petitioner of the two counts of assault with intent to commit murder but found him guilty of second-degree murder as a lesser offense to first-degree murder.

In an appeal of right, Petitioner argued that: (1) the trial court erred in admitting evidence of (a) a previous attempt to firebomb the same house and (b) Petitioner's tether-monitoring device; and (2) trial counsel was ineffective for failing to file a notice of intent to present evidence of Curtis Hawkins' prior arson conviction. The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his conviction. See Dickerson, 2013 WL 195959. Petitioner presented the same issues to the Michigan

---

[1] Judge Michael J. Talbot concurred in the result only.

Supreme Court who denied leave to appeal because in a standard order. People v. Dickerson, 834 N.W.2d 501 (Mich. 2013).

Two years later, in 2015, Petitioner filed a motion for relief from judgment in the trial court. He argued that: (1) trial counsel was ineffective for failing to call Curtis Hawkins at trial; (2) the trial court's supplemental instructions to the jury deprived him of a fair trial because they omitted the mens rea element for second-degree murder; (3) the three-year delay between the alleged incident and his arrest deprived him of due process; (4) the jury-verdict form was flawed because it did not provide an opportunity for a general verdict of not guilty; and (5) the admission of out-of-court statements made by Anthenetha Johnson and Anthony Marshall deprived him of due process and a fair trial.

The trial court denied the motion for lack of merit and on the grounds that Petitioner had failed to establish "good cause" under M.C.R. 6.508(D)(3) for failing to raise his claims on appeal and "actual prejudice from the alleged irregularities." People v. Dickerson, No. 10-012687-01-FC (Wayne Cty. Cir. Ct. Aug. 5, 2015). The trial court later denied reconsideration. People v. Dickerson, No. 10-012687-01-FC (Wayne Cty. Cir. Ct. Sept. 9, 2015). The Michigan Court of Appeals denied leave to appeal because Petitioner had "failed to establish that the trial court erred in denying the motion for relief from judgment." People v. Dickerson, No. 331635 (Mich. Ct. App. May 17, 2016). The Michigan Supreme Court denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). People v. Dickerson, 888 N.W.2d 80 (Mich. 2016). The Michigan Supreme Court later denied reconsideration. People v. Dickerson, 891 N.W.2d 494 (Mich. 2017).

On May 4, 2017, Petitioner filed the instant habeas petition. H presents the following claims: (1) the trial court denied him due process by admitting propensity evidence about Petitioner's tethering device and the attempted arson on the night before the actual arson; (2) trial counsel was ineffective for failing to call Curtis Hawkins as a witness; (3) the trial court's supplemental jury instructions deprived him of a fair trial and properly instructed jury; (4) the three-year delay between the alleged incident and his arrest deprived him of due process; (5) a flawed jury-verdict form did not provide an opportunity for a general verdict of not guilty; and (6) the admission of certain out-of-court statements by Anthenetha Johnson and Anthony Marshall deprived him of due process and a fair trial.

### III. Discussion

### A. Proper Motion

As an initial matter, Petitioner argues that the Court should strike Respondent's motion to dismiss because it does not address the substantive merits of his claims and therefore it is not a proper responsive pleading. This argument lacks merit.

Although a motion to dismiss under Fed. R. Civ. P. 12(b)(6) may not be appropriate in a habeas corpus proceeding, see Browder v. Director, Dep't of Corr. of Illinois, 434 U.S. 257, 269 n. 14 (1978), Respondent filed the motion under Rule 4 of the Rules Governing Section 2254 Cases, which states in relevant part that,

> [i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

4

Because the Court did not summarily dismiss the petition, the magistrate judge ordered Respondent to file a response to the petition. See Doc. 2. Respondent's motion to dismiss was an acceptable motion and response under Rule 4. The Court, therefore, proceeds to address Respondent's motion.

### B. Statute of Limitations

**1.**

Petitioner "filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so it is subject to AEDPA's stringent standards." Davis v. Bradshaw, __ F.3d __, __, No. 17-3262, 2018 WL 3913103, at *6 (6th Cir. Aug. 16, 2018) (citing Smith v. Mitchell, 567 F.3d 246, 255 (6th Cir. 2009)). Among other things, AEDPA established a one-year period of limitations for state prisoners to file federal habeas corpus petitions. Wall v. Kholi, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)). The limitations period runs from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**2.**

Here, Petitioner did not apply for a writ of certiorari in the United States Supreme Court on direct review of his conviction. Therefore, his conviction became final on October 28, 2013, ninety days after the Michigan Supreme Court denied leave to appeal on direct review. See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012); Sup. Ct. R. 13.1.

The statute of limitations began to run on the following day and ran uninterrupted for one year, until October 28, 2014. Petitioner filed his motion for relief from judgment in state court about four months later, on February 25, 2015. By that time, however, the limitations period had expired. The filing of the motion for relief from judgment did not revive the limitations period or restart the limitations clock at zero. Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (citing Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D. N.Y. 1998)). Therefore, even though Petitioner filed his habeas petition within a month of the last state court's order on collateral review, the petition is untimely, because it was filed more than a year after the conclusion of direct review.

### C. Equitable Tolling

AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). Nevertheless, a habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

6

Petitioner contends that he is entitled to equitable tolling of the limitations period because he needed Curtis Hawkins' affidavit to support the main claim in his motion for relief from judgment: that trial counsel was ineffective for failing to call Hawkins as a witness at trial.² Mot. for Relief from J., Ex. A (Doc. 5-16, PageID. 1261-63). Petitioner

---

2 In his affidavit, dated February 5, 2015, Hawkins states that –

- he was in police custody for an unrelated arson when Detroit detectives questioned him about the Eastwood Street arson;

- the police told him that Petitioner and other individuals had implicated him in the Eastwood Street arson and that he could be prosecuted for the crime, but if he was willing to testify against Petitioner, the police would arrange to have his prison time reduced on the unrelated arson case;

  he refused to implicate Petitioner in the Eastwood Street case, but he did tell the detectives that people in the neighborhood were saying that Anthony Marshall was the person responsible for the Eastwood Street firebombing;

- before Petitioner's trial, he was asked whether he was in a car with Petitioner and Anthenetha Johnson when Petitioner stated that he committed the arson on Eastwood Street and that he was paid to do it; he (Hawkins) responded to the question by stating that such a conversation never happened and that he was willing to testify to that fact at Petitioner's trial;

- he informed Petitioner's lawyer that Johnson was a liar, that she was having financial troubles, and that she waited four years to provide the police with information about the arson; and

- he was placed in the courtroom bullpen during the week of Petitioner's trial, but Petitioner's lawyer informed him in the bullpen that the attorney would not be calling Hawkins as a witness because Detroit detectives had said that Hawkins "had given up" Petitioner and provided the detectives with the telephone number for Petitioner's mother. As a result, he did not testify at Petitioner's trial.

7

asserts that he was unable to obtain Hawkins' affidavit until February 5, 2015, which was twenty days before he filed his motion for relief from judgment in the state trial court.

The basis for Petitioner's claim about trial counsel, however, was that counsel failed to call Curtis Hawkins as a witness at trial. Petitioner obviously became aware of his attorney's allegedly deficient performance at trial when his attorney failed to call Hawkins as a defense witness. He and Hawkins, moreover, apparently were part of the same group of friends at the time of the crime, see 9/21/11 Trial Tr. at 127-28 (Doc. 5-12, PageID. 971-72), and he was informed of Hawkins' place of incarceration during his trial, id. at 276-79 (PageID. 1120-23). In addition, Hawkins implies in his affidavit that, before Petitioner's trial, he informed defense counsel that Petitioner did not admit to committing the arson and that he was willing to testify to this fact at Petitioner's trial. Under the circumstances, Petitioner was not diligent in acquiring Hawkins' affidavit or in filing his state-court motion for relief from judgment sooner.

Even if the Court had concluded that Petitioner was diligent in pursuing his rights, he has not shown that some extraordinary circumstance stood in his way of filing a timely habeas petition. Two weeks after the Michigan Supreme Court denied leave to appeal on direct review, Petitioner's appellate attorney informed him that he had two options: file a motion for relief from judgment in state court or file a petition for the writ of habeas corpus petition in federal court. The attorney explained to Petitioner that a

federal habeas petition had to be filed within one year of the Michigan Supreme Court's decision.  See 8/13/13 letter to Petitioner (Doc. 5-23, PageID. 1513).  Petitioner then waited about a year and a half before he filed his motion for relief from judgment in state court.  As noted above, this was about four months after the limitations period expired.

In sum, Petitioner was not diligent in pursuing his claims, and no extraordinary circumstance stood in Petitioner's way and prevented him from filing a timely habeas petition.  Equitable tolling of the limitations period is not warranted.

### D.  Actual Innocence

Petitioner maintains his innocence, and actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass when the impediment to consideration of the merits of his constitutional claims is the expiration of the statute of limitations.  McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).

The Supreme Court has cautioned "that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' "  McQuiggin, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329).  "[T]he court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do'" and "assess the likely

impact of the evidence on reasonable jurors." House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 329). The actual-innocence gateway "is a narrow one," Davis, 2018 WL 3913103, at *8, and "it bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case." House, 547 U.S. at 538 (quoting Schlup, 513 U.S. at 327).

Petitioner's only "new" evidence is Curtis Hawkins' affidavit, which states that the conversation Petitioner supposedly had with him in Johnson's presence never happened and that Johnson is a liar. This is not new evidence because Hawkins states in his affidavit that he was asked before trial whether he was present when Petitioner admitted to committing the arson. According to Hawkins, he responded to the question by saying that the conversation never happened and he was willing to say that at Petitioner's trial.

Even if Hawkins' affidavit were considered new evidence, and even assuming that he would have testified that Petitioner never admitted to committing the arson, Hawkins informed police officer Lance Sullivan long before Petitioner's trial that Petitioner was involved with the Eastwood Street arson. 9/21/11 Trial Tr. at 266 (Doc. 5-12, PageID. 1110). It is unlikely that the jury would have found his conflicting testimony to be credible, as "[r]ecanting affidavits and witnesses are viewed with extreme suspicion." United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir. 1991), superseded in part on other grounds by U.S.S.G. § 2D1.5(a).

Furthermore, there was substantial evidence that supported Hawkins' initial incriminating statement to Officer Sullivan about Petitioner. Johnson, for example,

10

testified that she lived on Eastwood Street in 2007 and that, on September 30, 2007, she noticed a burned house on her way to work. That afternoon, Curtis Hawkins and Petitioner picked her up from work. During the ride home, Petitioner admitted to Hawkins that he had set fire to the house on Eastwood with a cocktail or little firebomb and that he was paid to do it by someone who was upset because an older gentleman had been calling the police. A few days later when Hawkins mentioned to Petitioner and Ms. Johnson that a woman had died in the fire, Petitioner said he did not care because his family had to eat. She (Johnson) made an anonymous call to a crime-reporting number, but she delayed talking to a police officer for a year because she had four children and she was afraid that someone would retaliate against her for reporting what she knew. She agreed to be a witness in the case after she received $9,600 to move out of the neighborhood. 9/21/11 Trial Tr. at 129-43 (Doc. 5-12, PageID. 973-87).

Anthony Marshall testified that, on the night in question, Petitioner approached him on Saratoga Street and asked him to take a walk with him. Petitioner was carrying a plastic bag with glass bottles in it at the time, and when they arrived at Eastwood Street, Petitioner told him to wait at the corner while he did something. Petitioner also instructed him to give a signal or to yell if he saw anything. Petitioner then walked up Eastwood past six or seven houses, disappeared for a minute by a house, and then ran back to Marshall without the bag. The two of them then ran back to Saratoga Street. On their way, Petitioner told him not to say anything about the incident. Petitioner later gave him money as an expression of thanks for looking out for him.

Continuing, Marshall stated that he did not report the incident to the police after he learned there had been a fire on Eastwood Street, because he was afraid that Petitioner might jump him or even kill him. However, on November 26, 2007, when Marshall was in jail, he spoke with the police and informed them what had happened. He subsequently refused to testify at Petitioner's preliminary examination because he was afraid of Petitioner and of being charged with a crime. He was later granted immunity from prosecution. Id. at 44-58 (Doc. 5-12, PageID. 888-902).

Police officer Scott Shea confirmed that, during an interview with Anthony Marshall on November 26, 2007, Marshall told him about Petitioner approaching Marshall on September 30, 2007, and later compensating him for acting as his lookout. 9/20/11 Trial Tr. at 157-64 (Doc. 5-11, PageID. 760-67). Officer Shea also testified about his contacts with Anthenetha Johnson and what he learned about the crime from Ms. Johnson. He confirmed that Ms. Johnson initially was unwilling to be a witness due to fear for herself and her children. Id. at 165-72 (PageID. 768-75). Finally, Officer Shea testified that he learned about Anthony Marshall from Curtis Hawkins in November of 2007 and that he did not prepare a written statement regarding his conversation with Hawkins because Hawkins, too, was afraid. 9/20/11 Trial Tr. at 226-28 (Doc. 5-11, PageID. 829-31).

Given the substantial evidence of Petitioner's guilt and the fact that Curtis Hawkins initially implicated Petitioner in the crime, no reasonable juror would have voted to acquit Petitioner of the murder charge if Hawkins had testified consistently with

his affidavit. Therefore, Petitioner is not entitled to pass through the narrow actual-innocence gateway and have his claims decided on their merits.

## IV. Conclusion

For the reasons stated above, the habeas petition is time-barred, and Petitioner is not entitled to statutory or equitable tolling of the limitations period. Petitioner also has not alleged a credible claim of actual innocence.

Accordingly, Respondent's motion for dismissal of the habeas petition (Doc. 4) is GRANTED, and the habeas petition (Doc. 1) is DISMISSED.

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). When, as in this case, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Petitioner's habeas petition is clearly time-barred. Therefore, reasonable jurists could not conclude that the Court's procedural ruling is incorrect or that the petition states a valid claim of the denial of a constitutional right. Accordingly, the Court DECLINES to issue a certificate of appealability.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 9/7/2018
      Detroit, Michigan